UNITED STATES of America,
Plaintiff–Appellee,

v.

Javier AVALOS, Defendant–Appellant.

No. 06–2228.

United States Court of Appeals,
Tenth Circuit.

Oct. 23, 2007.

Arnold J. Hanuman, Broomfield, CO, appearing for Defendant–Appellant.

James R.W. Braun, Assistant United States Attorney (Larry Gomez, Acting United States Attorney, with him on the brief), Office of the United States Attorney for the District of New Mexico, Albuquerque, NM, appearing for Plaintiff–Appellee.

Before TACHA, Chief Circuit Judge, BALDOCK, and KELLY, Circuit Judges.

TACHA, Chief Circuit Judge.

A jury convicted Defendant–Appellant Javier Avalos of distribution of five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). The District Court sentenced him to 262 months' imprisonment. He appeals both his conviction and his sentence. We exercise jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

In March 2004, Special Agent James Harley of the Drug Enforcement Administration was working with a cooperating defendant, Elmer Hayes. Based on information provided by Mr. Hayes, Agent Harley instructed him to make contact with Mr. Avalos to arrange a drug transaction. On March 10, while at New Mexico State Police Headquarters, and while in the presence of Agent Harley, Mr. Hayes purportedly placed a call to Mr. Avalos's pager. Mr. Hayes received a return call, and he arranged to buy an ounce of methamphetamine for $1250 from the caller. They agreed to meet at a 7–11 in Farmington, New Mexico, to complete the transaction.

Just prior to the scheduled deal, Agent Harley drove to the 7–11 with another officer, Agent Shane Skinner, to set up surveillance. When they arrived, Agent Harley observed a man wearing a white bandana and leaning up against the door of a white Oldsmobile. Agent Skinner testified that he recognized the man and told Agent Harley that it was Javier Avalos.

Later, Mr. Hayes, who had previously been searched for money and drugs, arrived at the 7–11 wearing a transmitting device that was being monitored by Agents Harley and Skinner. He was accompanied by Agent Gary Chavez posing as his friend. Mr. Hayes approached the white Oldsmobile while Agent Chavez remained in the car about fifteen feet away. Agent Chavez testified that, at that time, the person in the Oldsmobile was sitting low in the driver's seat and that Agent Chavez could not see him. Mr. Hayes exchanged

$1250 for a plastic bag containing methamphetamine through the driver's side window. Agent Chavez testified that, when the exchange took place, the man rose up in his seat and Agent Chavez was able to identify the man as Mr. Avalos.

Mr. Avalos was arrested on June 28, 2004. After he was advised of his *Miranda* rights, he waived those rights and agreed to speak with Agent Harley. He admitted that he had sold drugs in Farmington, but said he could not remember the specific deal on March 10, 2004.

On July 27, 2004, a grand jury indicted Mr. Avalos on one count of distribution of five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). At trial, Agents Skinner and Chavez, as well as Mr. Hayes, identified Mr. Avalos as the person in the Oldsmobile. Mr. Avalos, however, put on an alibi defense. Jessica Chavez, with whom Mr. Avalos had an intimate relationship during the relevant time period, testified in his behalf. She testified that she was with Mr. Avalos on March 10 and that he did not go to the 7–11 that day. The jury returned a guilty verdict. The District Court sentenced Mr. Avalos to 262 months' imprisonment after concluding that he was a "career offender" as that term is used in § 4B1.1(a) of the United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines").

Mr. Avalos timely appeals both his conviction and his sentence. He argues that (1) the District Court erred in admitting into evidence Mr. Avalos's statement regarding his prior drug trafficking activities; (2) the District Court committed reversible error when it failed to sequester witnesses after Mr. Avalos made a proper request; (3) there was insufficient evidence to support his conviction; (4) the District Court erred in adopting facts contained in the presentence report ("PSR")

without first holding an evidentiary hearing; and (5) the District Court erred in applying the career offender enhancement under U.S.S.G. § 4B1.1(a).

## II.  DISCUSSION

### A.  Admissibility of Mr. Avalos's Statement Regarding Prior Drug Deals

Prior to trial, the Government notified Mr. Avalos by letter that it intended to introduce his statement to Agent Harley that he had sold drugs in Farmington, but could not remember the specific deal on March 10, 2004. The Government considered the statement "part of the *res gestae* of, and ... inextricably intertwined with, the charged offense." The Government also explained, however, that if the District Court considered the statement other-act evidence under Fed.R.Evid. 404(b), the letter would serve as notice of the Government's intent to introduce the statement under that rule. *See* Fed.R.Evid. 404(b) (requiring the prosecution to provide advance notice of intent to introduce statements under the rule). After a brief hearing on the matter, the District Court ruled that the statement was admissible under Rule 404(b), but did not indicate the reason why. On appeal, Mr. Avalos argues that the evidence was admitted in error for two reasons: first, he maintains that it was improper propensity evidence under Rule 404(b); second, he contends that it was inadmissible because the court did not first hold an evidentiary hearing to determine whether he validly waived his *Miranda* rights before making the statement.

### 1.  Federal Rule of Evidence 404(b)

■ The Government first argues that, even though the District Court admitted the statement as other-act evidence under Rule 404(b), we can affirm on the ground that the statement constitutes direct evidence of the crime charged. *See United*

*States v. Green,* 175 F.3d 822, 831 (10th Cir.1999) ("Direct evidence or intrinsic evidence of the crime charged does not fall within the ambit of the rule."). In the alternative, the Government contends that the statement was admissible as other-act evidence because it falls within one of the exceptions specified in Rule 404(b).[1] For his part, Mr. Avalos contends that the statement was not admissible under any reading of the Rules of Evidence.

■ We conclude that, even if the District Court erred in admitting the statement, such error was harmless given the weight of the Government's case against Mr. Avalos. *See United States v. Bornfield,* 145 F.3d 1123, 1131 (10th Cir.1998) ("An erroneous admission of evidence is harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." (quotation marks omitted)). Three witnesses testified that it was Mr. Avalos who distributed the methamphetamine. Agent Skinner could identify Mr. Avalos because he knew Mr. Avalos before the events giving rise to the instant offense. Agent Chavez observed the transaction and identified Mr. Avalos as the perpetrator in court. Finally, Mr. Hayes testified that he had known Mr. Avalos since middle school. He further testified that, when he began cooperating with the police, he contacted Mr. Avalos to set up a drug deal, and it was Mr. Avalos who arrived at the 7–11 and sold him the drugs.

In contrast, Mr. Avalos presented one witness, Jessica Chavez, to testify as to his whereabouts on March 10. Jessica Chavez was Mr. Avalos's girlfriend on March 10, 2004. She testified that Mr. Avalos was with her that day and that they never went to the 7–11. She further testified that she first learned about the nature of the charge against Mr. Avalos approximately one month before trial, in December 2005, when a defense investigator contacted her to ask about her relationship with Mr. Avalos. When defense counsel asked her how she could remember where she was on a specific day more than a year and a half earlier, she responded:

> Because it happened—well, I do remember the incident or whatever because, well, I remember—let's see, how can I tell you? I remember because, well, I was with him at that time and I, I just, I know—Can you like rephrase your question or ask me a more specific question?

When defense counsel asked the question again, she responded that she remembered it was March 10, 2004, because Mr. Avalos had wired money in Ms. Chavez's name and she went with him to pick it up. In light of the substantial evidence establishing Mr. Avalos's identity as the perpetrator, and in light of the dubious credibility of Mr. Avalos's alibi witness, we are convinced that any erroneously admitted testimony did not have a substantial effect on the outcome of the trial.

### 2. *Evidentiary hearing on waiver of Miranda rights*

■ Mr. Avalos also seeks a reversal of his conviction because the District Court

---

**1.** The Government also suggests that no Rule 404(b) analysis is necessary because Mr. Avalos's statement is an admission under Rule 801(d)(2)(A) and that we can affirm on this basis. To the contrary, an admission that falls within the scope of Rule 404(b) must be separately analyzed under that rule. *See United States v. Oberle,* 136 F.3d 1414, 1418 (10th Cir.1998) ("Although the statements are party admissions under Rule 801(d) and thus

not hearsay, they must nevertheless also be analyzed for admissibility under Rule 404(b) because they reveal or suggest prior criminal conduct."); *United States v. Maden,* 114 F.3d 155, 156 (10th Cir.1997) (stating that defendant's admission must be analyzed under both Rule 801(d)(2)(A) and Rule 404(b)); *see also United States v. Simpson,* 479 F.3d 492, 502 (7th Cir.2007) (same, citing *Oberle* ).

did not hold an evidentiary hearing to determine whether Mr. Avalos validly waived his *Miranda* rights before making the statement. Mr. Avalos did not raise this *Miranda* issue before the District Court and did not request an evidentiary hearing on the matter. Because Mr. Avalos did not raise the issue below, he has waived it. *See United States v. Miller,* 987 F.2d 1462, 1464 (10th Cir.1993) (failure to bring a pretrial motion to suppress a confession as involuntary waives the issue; the district court is under no duty to hold an evidentiary hearing when the issue is not timely raised); *see also United States v. Brooks,* 438 F.3d 1231, 1239–40 (10th Cir.2006) (declining to address on appeal defendant's contention that evidence obtained in violation of the Fourth Amendment should have been suppressed when issue was not raised below); *United States v. Yannott,* 42 F.3d 999, 1005 (6th Cir. 1994) (declining to address on appeal defendant's contention that his confession was involuntary when issue was not raised below).[2]

## B. Sequestration of Witnesses

Federal Rule of Evidence 615 provides: At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause, or (4) a person authorized by statute to be present.

Fed.R.Evid. 615.

Agent Harley was the first witness for both the Government and Mr. Avalos. After he testified in the Government's case-in-chief, he remained in the courtroom at the request of counsel for Mr. Avalos, and the Government called Agent Skinner to the stand. During Agent Skinner's testimony, defense counsel sought to invoke Rule 615. Specifically, counsel for Mr. Avalos approached the bench and said: "Judge, I wasn't sure if that gentleman in the back was a witness or not. If he is, we are invoking the rule." The Government stated that the individual was not a witness, but the court invoked the rule anyway by stating: "The rul[e] will be invoked. If you all could please keep an eye out for any witnesses." The court did not, however, issue an instruction or otherwise order potential witnesses from the courtroom, which we have held is required:

> A failure to instruct the witnesses fully after the Rule is invoked may cause reversal. The witnesses should be clearly directed, when the Rule is invoked, that they must all leave the courtroom (with the exceptions the Rule permits), and that they are not to discuss the case or what their testimony has been or would be or what occurs in the courtroom with anyone other than counsel for either side.

*United States v. Buchanan,* 787 F.2d 477, 485 (10th Cir.1986).

As a result, Agent Harley remained in the courtroom while Agent Skinner contin-

---

**2.** In some cases, rather than declining to consider the issue altogether, we have applied plain-error review to unraised suppression claims. *See Brooks,* 438 F.3d at 1240 n. 4 (citing *United States v. Meraz–Peru,* 24 F.3d 1197, 1198 (10th Cir.1994) and *United States v. Dewitt,* 946 F.2d 1497, 1502 (10th Cir. 1991)). But Mr. Avalos alleges no facts that would lead us to conclude the District Court plainly erred in failing to hold an evidentiary hearing.

ued to testify about his surveillance of the methamphetamine transaction. During this testimony, Agent Skinner said that he told Agent Harley that the individual they saw on the day in question was Mr. Avalos. Later, Mr. Avalos called Agent Harley to testify as a rebuttal witness, and Agent Harley confirmed Agent Skinner's testimony regarding this statement on cross-examination by the Government.

Mr. Avalos now argues that his conviction should be reversed because the District Court did not instruct Agent Harley to leave the courtroom after Rule 615 was invoked, thereby impermissibly permitting him to hear Agent Skinner's testimony in advance of Agent Harley's own testimony as a rebuttal witness for Mr. Avalos. Because Mr. Avalos did not timely object at trial, we review only for plain error. *See United States v. Sinks*, 473 F.3d 1315, 1322 (10th Cir.2007).

■ Under Rule 615(2), a court need not exclude "an officer or employee of a party which is not a natural person designated as its representative by its attorney." Fed.R.Evid. 615(2). Every circuit to confront the issue has held that the government's designated case agent in a criminal case falls within this exception. *See United States v. Charles*, 456 F.3d 249, 257 (1st Cir.2006); *United States v. Rivera*, 971 F.2d 876, 889 (2d Cir.1992); *United States v. Pulley*, 922 F.2d 1283, 1285 (6th Cir.1991); *United States v. Gonzalez*, 918 F.2d 1129, 1138 (3rd Cir.1990); *United*

*States v. Adamo*, 882 F.2d 1218, 1235 (7th Cir.1989); *United States v. Parodi*, 703 F.2d 768, 773 (4th Cir.1983); *United States v. Butera*, 677 F.2d 1376, 1381 (11th Cir. 1982); *United States v. Cueto*, 611 F.2d 1056, 1061 (5th Cir.1980). We now join these circuits and hold that the government may designate a case agent responsible for an investigation as its representative under Rule 615(2). Consequently, the court need not instruct the designated case agent to leave the courtroom, even though that agent may also be a witness.

■ Mr. Avalos does not dispute that a case agent falls within this exception to the rule. Rather, he argues that the Government never designated Agent Harley as its representative, and therefore, the District court erred by allowing him to remain in the courtroom. Generally, the government must formally designate its Rule 615(2) representative on the record at the time the defendant moves to sequester witnesses. *Cueto*, 611 F.2d at 1061. Because the Government did not do so, the District Court erred in failing to instruct Agent Harley to leave the courtroom.[3] But the court's error in this case does not warrant a reversal of Mr. Avalos's conviction because it did not affect Mr. Avalos's substantial rights as required by the third prong of plain-error review. *Sinks*, 473 F.3d at 1322.

■ Mr. Avalos must make a specific showing of prejudice to satisfy the third prong of plain-error review. *See United*

---

**3.** Although the Government did not designate Agent Harley as its Rule 615(2) representative on the record, it is clear in this case that the court, as well as counsel for Mr. Avalos, treated him as such. During Agent Harley's testimony, Mr. Avalos's counsel elicited responses that Agent Harley was "the case agent in this case" and that he was the "supervisor directing other persons in the case." Furthermore, the record shows that Mr. Avalos's counsel was concerned not about Agent Harley's presence in the courtroom, but about the presence

of other potential witnesses, indicating his understanding of the general rule that a case agent may serve as the government's representative under Rule 615(2) and may remain in the courtroom. Nevertheless, because the Government did not designate Agent Harley as its representative on the record, the District Court was under an obligation to instruct him to leave. We so hold in order to speak clearly on the proper procedure once Rule 615 is invoked.

*States v. Atencio,* 435 F.3d 1222, 1231 (10th Cir.2006). This standard requires the defendant to show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Corchado,* 427 F.3d 815, 818 (10th Cir.2005) (quotation omitted). As discussed above, the strength of the Government's case against Mr. Avalos was overwhelming. Three witnesses unequivocally testified that Mr. Avalos was the man who distributed the drugs to Mr. Hayes. The jury obviously credited this testimony. We conclude that Agent Harley's testimony confirming that Agent Skinner told him at the scene that they were looking at Mr. Avalos had no effect on the outcome of trial.[4]

## C. Sufficiency of the Evidence

■ We review claims of insufficient evidence de novo, viewing the evidence in the light most favorable to the government. *United States v. Willis,* 476 F.3d 1121, 1124 (10th Cir.2007). "Evidence is sufficient to support a conviction if ... a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Id.* (quotation omitted). "We will reverse a conviction only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quotation omitted).

■ According to Mr. Avalos, the Government did not meet its burden to prove that he was the person who sold the methamphetamine to Mr. Hayes. As discussed above, however, the Government introduced overwhelming evidence of Mr. Avalos's guilt at trial.

■ Mr. Avalos also suggests that the jury was required to make an explicit finding as to the quantity of methamphetamine

involved. He cites no authority for such a proposition, and we are aware of none. Rather, the jury instructions required the jury to find beyond a reasonable doubt that Mr. Avalos distributed five or more grams of methamphetamine. At trial, a forensic chemist for the Drug Enforcement Agency testified that the amount of pure methamphetamine involved in the transaction was 5.7 grams. This testimony is sufficient to support the jury's finding regarding the quantity of the drug.

## D. Sentencing

### 1. The District Court's adoption of facts as stated in the PSR

■ The Federal Rules of Criminal Procedure require that the district court rule on any disputed portion of the PSR or determine that a ruling is not necessary either because the matter will not affect sentencing or because the district court will not rely on it. Fed.R.Crim.P. 32(i)(3)(B). The district court may, however, accept any undisputed portion of the PSR as a finding of fact. Fed.R.Crim.P. 32(i)(3)(A). Mr. Avalos contends that the District Court failed to comply with Rule 32(i)(3)(B) because it adopted the facts as stated in the PSR without making any specific factual findings. We review de novo a district court's compliance with the Federal Rules of Criminal Procedure. *United States v. Rodriguez–Delma,* 456 F.3d 1246, 1253 (10th Cir.2006).

■ To invoke the district court's fact-finding obligation under Rule 32, "the defendant is required to make specific allegations of factual inaccuracy." *Id.* (quotation marks omitted). In particular, a defendant must "make a showing that the information in the PSR [is] unreliable and articulate the reasons why the facts con-

---

4. Mr. Avalos suggests that there might have been other witnesses in the courtroom besides Agent Harley who were not ordered to leave. But even if the court erred in not instructing these witnesses to leave, Mr. Avalos has not shown how this error affected his substantial rights under the third prong of plain-error review. *See Atencio,* 435 F.3d at 1231.

tained therein [are] untrue or inaccurate." *Id.* (quotation omitted). Mr. Avalos did not file any written objections to the PSR. *See* Fed.R.Crim.P. 32(f)(1) (requiring parties to serve written objections to PSR on opponent and probation officer). At sentencing, the District Court asked Mr. Avalos's counsel whether "there [were] objections to the facts contained in the [PSR]." Counsel responded that "our objections are just to the factual conclusions that lay out his guilt. But other than that, no." This generalized objection was not sufficient to satisfy Mr. Avalos's affirmative duty to show that a controverted matter exists. *See Rodriguez–Delma,* 456 F.3d at 1254 (stating that an "object[ion] to the conclusion in the PSR is not sufficient to imply that a controverted matter exists"). Because Mr. Avalos failed to make any allegations of factual inaccuracy, the District Court's fact-finding obligation was never triggered. Accordingly, the court did not err in adopting the facts as stated in the PSR.

### 2. *Application of the career offender enhancement*

█ Finally, Mr. Avalos contends that the District Court erred in applying the career offender enhancement under U.S.S.G. § 4B1.1 because, he maintains, one of his predicate felonies—escape from jail—is not a "crime of violence." To the contrary, we have repeatedly held that escape is categorically a crime of violence because it "always constitutes conduct that presents a serious potential risk of physical injury to another." *See United States v. Patterson,* 472 F.3d 767, 783 (10th Cir. 2006); *United States v. Turner,* 285 F.3d 909, 915–16 (10th Cir.2002) ("Even though initial circumstances of an escape may be non-violent, there is no way to predict what an escapee will do when encountered by the authorities. Every escape is a powder keg, which may or may not explode into violence." (quotation omitted)); *see*

*also* U.S.S.G. § 4B1.2(a) cmt. n. 1 (defining "crime of violence" to include an offense that involves conduct that "present[s] a serious potential risk of physical injury to another"). Mr. Avalos concedes in his reply brief that Circuit precedent forecloses this argument and he seeks merely to preserve the issue for further review. We acknowledge that he has done so.

### III. CONCLUSION

We conclude that Mr. Avalos was not prejudiced by any error in failing to instruct potential witnesses to leave the courtroom. In addition, any error in admitting evidence was harmless. Accordingly, we AFFIRM Mr. Avalos's conviction. Finally, we conclude that the District Court did not err in adopting the facts as stated in the PSR and in concluding that Mr. Avalos's prior conviction for escape from prison is a "crime of violence." We therefore AFFIRM Mr. Avalos's sentence.