FILED
United States Court of Appeals
Tenth Circuit

April 25, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GLENN ERIC STARR,

Defendant - Appellant.

No. 07-5059

N.D. Oklahoma

(D.C. No. CR-06-69-TCK)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON**, and **MURPHY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Glenn Eric Starr was convicted by a jury of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He appeals his conviction, arguing

_____

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the district court erred by admitting domestic assault evidence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and **affirm** Starr's conviction.

## I.    Background

Tulsa Police Officers responded to an emergency 911 call on September 10, 2005. The officers arrived at an apartment complex on East Independence Avenue. The caller, Leah McIntosh, informed the 911 dispatcher that her daughter, Sara McIntosh, was involved in a domestic dispute with her boyfriend, Starr. She further relayed that Starr had forced Sara McIntosh into the apartment and had a gun in his back pocket. Upon arrival, the officers found Starr standing in the doorway of Sara McIntosh's apartment. Personal belongings were scattered around the street. Starr returned to the house, and reemerged holding a five-month old child. When police inquired as to whether he had been involved in a domestic dispute, Starr denied any problems and told the officers Sara McIntosh had left and he was unaware of her whereabouts. Starr was visibly upset, sweating, and had a cut on his hand that was bleeding. At that time, Sara McIntosh opened the apartment door. She was crying and officers noticed swelling and bruising on her face. Officers instructed Starr to hand the child over to Sara McIntosh and Starr complied. After initially resisting, Starr was placed under arrest for domestic violence and taken into custody.

Sara McIntosh told officers that during the altercation, Starr had pointed a black pistol at her. Officers obtained Sara McIntosh's consent to search the

apartment.  They located a Beretta pistol behind the sofa in the living room.  A federal grand jury thereafter charged Starr with being a felon in possession a firearm in violation of 18 U.S.C. § 922(g)(1).

Prior to trial, Starr moved *in limine* to exclude references to the domestic violence charge and the related facts.  The government responded that it intended to introduce evidence indicating (1) Leah McIntosh initially reported that Starr had taken Sara McIntosh into the house and she reported that Starr had a gun; and (2) Sara McIntosh made statements to the police that while she was being beaten, Starr pointed the gun at her.  The district court denied Starr's motion with respect to the details of the 911 call and Sara McIntosh's statements to the police.  The court explained the domestic abuse facts were intertwined with the facts supporting the firearm charge.  It left open the possibility, however, that it would sustain an objection at trial if the government did not limit its use of this evidence.

At trial, the 911 call made by Leah McIntosh was introduced.  Several officers testified that they responded to a domestic violence call in which the caller reported that the defendant had a gun, that when they arrived on scene they observed Sara McIntosh had bruising on her face, and there were signs that an altercation had taken place.  Before the government called Sara McIntosh to the stand, the prosecution asked for a bench conference to discuss what testimony would be allowed into evidence.  The court reiterated that Sara McIntosh could

testify that Starr had pointed a gun at her during the beating as this evidence was intertwined, but asked the government to "minimize" its discussion of the domestic violence evidence.

Sara McIntosh then took the stand and testified that she was romantically involved with Starr and that he was the father of her two children. She testified that when she arrived home on September 10, 2005, Starr pulled her out of the car by her hair and pulled her into the apartment. Once in the house, Starr threw her around and beat her with his belt buckle, including numerous beatings to the face. He then put her son in her arms and threw them to the ground. He also started to kick her stomach. Sara McIntosh testified she was pregnant with her second child and perhaps the reason Starr stopped kicking her was he remembered she was pregnant. At that point Starr pulled out his gun, pointed it in her face and then pointed it in her crotch. Sara McIntosh testified she told Starr, "Just go ahead and kill me." He responded, "What, you don't think I will?" Sara McIntosh testified she got a "pretty good look" at the gun and that it was "solid black" and "not real big." After examining the gun seized by the police officers, Sara McIntosh stated, "That looks like the gun." She also testified she was with Starr, several days before his arrest, when he acquired the gun.

As Sara McIntosh began testifying about being beaten, Starr objected to the narrative answer. The district court overruled the objection. Starr was found

guilty after a two-day trial and sentenced to 77 months' imprisonment followed by three years' supervised release.

## II.   Analysis

Starr argues the district court committed reversible error by admitting evidence that he physically abused Sara McIntosh.  This evidence, he argues, was inadmissible under Federal Rule of Evidence 404(b).  This court reviews a district court's evidentiary rulings under Rule 404(b) for abuse of discretion.  *United States v. Moran*, 503 F.3d 1135, 1143 (10th Cir. 2007).  "We will not reverse a district court's ruling if it falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical."  *Id.* (quotation omitted).

Rule 404(b) prohibits "bad acts" evidence to prove a defendant's bad character or propensity to commit the crime.  The rule states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Extrinsic evidence is admissible under Rule 404(b) if the four factors identified in *Huddleston v. United States* are satisfied: (1) the evidence must be offered for a proper purpose; (2) it must be relevant; (3) its probative value must not be substantially outweighed by its potential for unfair prejudice under Federal Rule

of Evidence 403; and (4) the court gives a proper limiting instruction, if requested by the defendant.  485 U.S. 681, 691-92 (1988).[1]

Direct or intrinsic evidence of the crime charged, however, does not fall within the ambit of Rule 404(b).  *See United States v. Avalos*, 506 F.3d 972, 975-76 (10th Cir. 2007).  In *United States v. Record*, we stated intrinsic evidence includes uncharged acts that are "part of the scheme for which the defendant is being prosecuted . . .  or if it was 'inextricably intertwined' with the charged crime such that a witness' testimony would have been confusing and incomplete without mention of the prior act."  873 F.2d 1363, 1372 n.5 (10th Cir. 1989) (quotation and citation omitted).  Evidence is "inextricably intertwined" with the charged offense if it forms "an integral and natural part of the witness' account of the circumstances surrounding the offense for which the defendant was indicted." *United States v. Johnson*, 42 F.3d 1312, 1316 (10th Cir. 1994) (quotation and alteration omitted).

The district court, in its several rulings on this issue, declared evidence that Sara McIntosh was beaten was "inextricably intertwined" with the issue of whether Starr was in knowing possession of a firearm.[2]  We agree the 911 call, in

---

[1]Starr moved to supplement the record with the jury instructions given at trial to demonstrate the absence of limiting instructions.  Because both parties agree that no limiting instructions were requested or given, the supplement is unnecessary and we **deny** the motion to supplement the record.

[2]To obtain a conviction for felon in possession, the government must prove:
(continued...)

which Leah McIntosh told police Starr had a loaded gun and was beating her daughter, was a "natural part of the witness' account of the circumstances surrounding the offense." *Johnson*, 42 F.3d at 1316. It explained why the officers arrived on the scene. *See, e.g.*, *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995). Further, evidence that Sara McIntosh saw the gun while Starr beat her and then threatened her with it gives context to her account. *See United States v. Masters*, 622 F.2d 83, 86 (4th Cir. 1980) (explaining evidence is admissible when "necessary to present a full presentation of a case" (quotation omitted)). As the government points out, Sara McIntosh's description of the gun was lacking in detail. She merely stated that it was "solid black" and "not real big." Allowing the jurors to understand the context in which saw the gun—while being physically assaulted—lends credibility to her statement and explains why should could not provide a more detailed description.

Admittedly, Sara McIntosh was permitted by the court to testify in some detail about the beating she received from Starr. This included evidence that Starr threw her while holding her five-month old child, kicked her in the stomach while she was pregnant, used a belt buckle to beat her, and stated that he was willing to kill her. Although the prosecution is entitled to some leeway in giving

[2](...continued)
"(1) the defendant was previously convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce." *United States v. Ledford*, 443 F.3d 702, 705 (10th Cir. 2005). Starr stipulated to the first and third elements.

context to Sara McIntosh's testimony, it is possible some of this evidence was not "inextricably intertwined" with the charged crime. These more detailed statements are not necessary preliminaries to the crime charged, nor are they "part and parcel of the proof of the offense charged." *Kimball*, 73 F.3d at 272 (alteration and quotation omitted). As extrinsic evidence, it may have exceeded the bounds of permissible evidence under Rule 404(b). *See United States v. Sarracino*, 131 F.3d 943, 949 (10th Cir. 1997) (explaining excessive details establishing context were prejudicial because they highlighted defendant's violent nature).

Even if the district court abused its discretion in admitting Sara McIntosh's detailed testimony about the attack, we may affirm Starr's conviction if the error was harmless. "In conducting a harmless error review, we review the record de novo." *United States v. Flanagan*, 34 F.3d 949, 955 (10th Cir. 1994). Because the admission of extrinsic evidence in violation of Rule 404(b) is a non-constitutional error, we apply the harmless error standard from *Kotteakos v. United States*, 328 U.S. 750, 765 (1946). Under that standard, we review the entire record, focusing particularly on the erroneously admitted statements. *United States v. Tome*, 61 F.3d 1446, 1455 (10th Cir. 1995). We must determine whether the statements, in light of the entire record, (1) "'substantially influence[d]'" the outcome of the trial, or (2) leave us in "'grave doubt'" as to

whether they had such an effect. *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc) (quoting *Kotteakos*, 328 U.S. at 765).

We have no such doubt. Overwhelming evidence was introduced that Starr knowingly possessed the firearm. Sara McIntosh testified she was with him when he purchased the gun several days prior to the altercation. Officers found the weapon inside the apartment in which he was residing and Sara McIntosh provided evidence placing the gun in Starr's hands. Further, evidence was introduced through the 911 dispatch tape that Starr was in possession of a gun.[3] Sara McIntosh's description of the altercation occupies a mere paragraph of the trial transcript. The government did not emphasize this testimony in its opening statement or closing argument. Therefore, any error made by the district court was harmless.

---

[3]Starr points to evidence suggesting that the gun was in his house because Sara McIntosh's brothers had dropped it after visiting the house and engaging in an altercation with Starr. Further, Sara McIntosh testified that she wrote a letter telling Starr, "I had a dream last night telling me to get you out of this mess by admitting—by admitting lying about the gun being yours." Although this evidence supports Starr's theory of the case, it does not indicate to this court the jury was substantially influenced by the evidence of the assault in rendering its verdict.

**III.    Conclusion**

Based on the foregoing reasons, we **affirm** the district court.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge