[Cite as *State v. Watson*, 2012-Ohio-1624.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 25915 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MARVIN G. WATSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 09 2609 |

DECISION AND JOURNAL ENTRY

Dated: April 11, 2012

BELFANCE, Judge.

{¶1} Marvin Watson appeals his convictions for unlawful sexual conduct with a minor and sexual battery. For the reasons set forth below, we affirm.

I.

{¶2} K.T. is the half-sister of one of Mr. Watson's children. Throughout her childhood, she and her half-brother would spend every other weekend at Mr. Watson's home. Mr. Watson began making sexual remarks towards her and eventually began a sexual relationship with her when she was a teenager.

{¶3} When K.T. turned 18, she moved out of her mother's home and began living with her cousin. She told her cousin about her relationship with Mr. Watson, and her cousin encouraged K.T. to make a report to the police. K.T. spoke with Detective Susan Hackbart, who asked K.T. to make a one-party consent call to Mr. Watson and to record the conversation, which she did.

**{¶4}** Mr. Watson was indicted for unlawful sexual conduct with a minor and sexual battery, and a jury found him guilty of both counts. The trial court merged the unlawful sexual conduct conviction with the sexual battery and sentenced Mr. Watson to five years in prison. Mr. Watson has appealed, raising two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

WATSON'S CONVICTIONS FOR SEXUAL BATTERY AND UNLAWFUL CONDUCT WITH A MINOR WERE BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW, AS NO EVIDENCE WAS PRESENTED TO ESTABLISH THE NECESSARY ELEMENT OF PENETRATION TO SUSTAIN SUCH CONVICTIONS.

**{¶5}** In Mr. Watson's first assignment of error, he argues that his convictions were not supported by sufficient evidence. We disagree.

**{¶6}** In determining whether the evidence presented was sufficient to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 274 (1991). Furthermore:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

**{¶7}** Mr. Watson was convicted of violating R.C. 2907.04(A), which provides that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." He

was also convicted of violating R.C. 2907.03(A)(5), which provides that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person."

> "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A).

{¶8} We initially note that Mr. Watson does not suggest that there was insufficient evidence to find that he was a person in loco parentis or that, if sexual conduct occurred, K.T. was between the ages of 13 and 16. Instead, he argues that "there is nothing in the testimony of [K.T.] that establishes any actual penetration in any of the alleged acts of sexual misconduct * * *."

{¶9} K.T. testified that Mr. Watson was like a "father figure[]" to her. She had known Mr. Watson since she was approximately five years old due to his relationship with her mother with whom he had a son. She would often accompany her half-brother over to Mr. Watson's house every other weekend, and Mr. Watson would invite her to family gatherings and take her to church. According to K.T., Mr. Watson bought her school supplies, helped her with her homework, and paid her library fines. Mr. Watson even paid for her cell phone.

{¶10} K.T. testified that, when she turned 13 or 14, Mr. Watson asked her to become sexually involved with him, making remarks like "you are not going to be a virgin forever * * *." One night, Mr. Watson picked K.T. up from a friend's house and drove her to Hardesty Park. He parked the car and they discussed having sex with each other. K.T. testified that she was initially

willing but that, "[w]hen it started to happen, [she] was kind of getting scared * * *." Despite her repeated statements that they should not have sex, Mr. Watson told her to relax and try not to think about it. They had vaginal intercourse in the back of Mr. Watson's van, and then he dropped her off at her house.

{¶11} According to K.T., this was not the only time they had sex. They also had sex at the home of Tamica Watson, who was Mr. Watson's wife, when K.T. was 14 or 15. She also testified that they engaged in oral sex with her performing fellatio and Mr. Watson performing cunnilingus. K.T. testified that they continued to have sex until she was 17.

{¶12} K.T. eventually moved in with her cousin, who encouraged her to speak with the police about her relationship with Mr. Watson. She spoke with Detective Hackbart, who requested that K.T. call Mr. Watson and record the conversation, which she did. During the call, Mr. Watson admitted to having sex with K.T., and said that the first time was at Ms. Watson's house. K.T. replied that that was wrong, and that they had first had sex over at Hardesty Park when she "was going to Litchfield." Mr. Watson did not believe that to be the case, but, when K.T. filled in the details about him picking her up from a friend's house, he responded "Ok now I gotcha. I gotcha ok alright." K.T. suggested that they had continued to have sex from that point when she was 13 until she was 17 and that she did not understand why Mr. Watson was upset because she might have a new boyfriend. Mr. Watson responded, "Well I thought me and you had an understanding[.]"

{¶13} As we noted above, Mr. Watson confines his sufficiency argument to whether the State presented sufficient evidence that sexual conduct occurred. He argues that, because K.T. "characterized the activity [] without any details as 'sexual intercourse[,]' 'sex[,]' or 'oral sex[,]'" there was no evidence that any penetration had occurred and, therefore, there was no

evidence that sexual conduct had occurred. However, K.T.'s testimony, when viewed in the light most favorable to the State, leads to the logical inference that penetration occurred. Furthermore, Mr. Watson's argument ignores the fact that cunnilingus is included in the definition of sexual conduct, *see* R.C. 2907.01(A), and K.T. specifically testified that Mr. Watson had performed oral sex on her.

{¶14} During the recorded conversation, Mr. Watson admits to engaging in sexual conduct with K.T. and never disputed K.T.'s statement during the conversation that their relationship lasted from when she was 13 until she was 17. K.T. testified that the relationship had begun when she was 13 and that Mr. Watson was a "father figure[]" with whom she had spent many weekends growing up and who took her to church, helped with her homework, and provided supplies and a cell phone for her. Viewing the evidence in the light most favorable to the State, there was sufficient evidence for the jury to find that Mr. Watson had engaged in unlawful sexual conduct with a minor and had committed sexual battery.

{¶15} His first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PLAIN ERROR IN ADMITTING PREJUDICIAL AND INFLAMMATORY EVIDENCE OF OTHER ALLEGED ACTS OF SEXUAL MISCONDUCT OF DEFENDANT.

{¶16} In Mr. Watson's second assignment of error, he argues that the trial court committed plain error when it allowed K.T.'s cousins to testify about their sexual relationships with him.

{¶17} We initially note that, despite the contrary representations of Mr. Watson and the State, Mr. Watson's trial counsel did preserve this error for appeal, objecting when the State's direct examination of the cousins reached their testimony about their alleged relationships with

Mr. Watson. Mr. Watson's counsel also requested that the trial court "note a continuing objection[,]" which the trial court did in both instances. Accordingly, Mr. Watson has not forfeited all but plain error on appeal and, therefore, we will review the assigned error under the applicable standard of review. *See State v. Horne*, 9th Dist. No. 25238, 2011-Ohio-1901, ¶ 7.

**{¶18}** Mr. Watson argues that the testimony of K.T.'s cousins was inadmissible under Evid.R. 404(B), which provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This Court has reviewed the admissibility of Evid.R. 404(B) evidence under both a de novo and an abuse of discretion standard. *Compare Horne* at ¶ 8 (abuse of discretion) *with State v. Morris*, 9th Dist. 09CA0022-M, 2010-Ohio-4282, ¶ 13 (de novo review). The Supreme Court has accepted review of this issue. *See State v. Morris*, 128 Ohio St.3d 1448, 2011-Ohio-1618.

**{¶19}** However, we do not need to resolve the standard review at this time because, under either standard, the admission of the testimony of K.T.'s cousins was erroneous. The State essentially concedes this point in its brief, acknowledging that their testimony "demonstrates that [Mr.] Watson engages in sexual relations with girls whom he knows through family and who are of a certain age range[]" while putting forth no argument that the testimony falls within one of the exceptions of Evid.R. 404(B). Instead, the State argues that the error was harmless. *See* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). In this case, we agree.

**{¶20}** Even where the admission of evidence is erroneous, the error is harmless where there is overwhelming evidence of the defendant's guilt. *State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus. Mr. Watson admitted during the recorded conversation

with K.T. that they had had sex. He also agreed that the first time they had had sex was in Hardesty Park and that she was going to Litchfield, which is a middle school, at the time. Nor did he dispute her statement that she was 13 when their sexual relationship began.

{¶21} Mr. Watson also told her in the phone conversation that being with her was his "dream" and that he "was building [his] whole life around [his] dream * * * and nothing else mattered." He said to K.T., "You are all I ever wanted. I would have done anything you told me to do. * * * I thought if I could make you happy, we'd stay together. That's all I wanted." He added, "The day you said you'd have my baby, I didn't sleep that whole night."

{¶22} In addition to Mr. Watson's statements in the phone conversation, K.T. testified at length about Mr. Watson's relationship with her, specific acts of sexual conduct, the duration of their sexual relationship, and how old she was when the sexual conduct occurred. Given Mr. Watson's admissions in the phone conversation and K.T.'s testimony, there was overwhelming evidence of Mr. Watson's guilt. Accordingly, the admission of the other acts testimony, in this case, was harmless error.

{¶23} Mr. Watson's second assignment of error is overruled.

III.

{¶24} Mr. Watson's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT

DICKINSON, J.
CONCURS.

CARR, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.