[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Morris,* Slip Opinion No. 2014-Ohio-5052.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-5052

THE STATE OF OHIO, APPELLANT, v. MORRIS, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Morris,* Slip Opinion No. 2014-Ohio-5052.]

*Criminal procedure—Appeals—Standard of review for determining harmlessness of erroneously admitted evidence.*

(No. 2013-0251—Submitted February 2, 2014—Decided November 20, 2014.)

APPEAL from the Court of Appeals for Medina County,

No. 09CA0022-M, 2012-Ohio-6151.

_____

SYLLABUS OF THE COURT

In determining whether to grant a new trial as a result of the

erroneous admission of evidence under Evid.R. 404(B),

an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record.

———————————————————

**LANZINGER, J.**

{¶ 1} This is the second time we have had this case before us. Previously, we remanded the cause to the Ninth District Court of Appeals to consider whether the trial court abused its discretion in admitting other-acts evidence under Evid.R. 404(B) during the trial of Carl M. Morris on two counts of rape of his minor stepdaughter. 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, reversing 9th Dist. Medina No. 09CA0022-M, 2010-Ohio-4282. On remand, the court of appeals vacated Morris's conviction and ordered a new trial. Although there was no majority opinion, the court apparently found that the trial court did abuse its discretion by admitting impermissible evidence. One judge also determined that this error, coupled with the state's repeated references to the improper character evidence, violated Morris's due-process right to a fair trial, concluding that there was "a reasonable possibility that the improper evidence may have contributed to the conviction" and therefore that the error could not be determined to be harmless beyond a reasonable doubt. 2012-Ohio-6151, 985 N.E.2d 274, ¶ 60.

{¶ 2} We now affirm the judgment of the court of appeals that the appropriate remedy for the improper admission of other-acts evidence under Evid.R. 404(B) in this case is a new trial.

**The Evidence at Trial**

{¶ 3} The state charged Morris with two counts of rape of his minor stepdaughter, S.K., under R.C. 2907.02, a first-degree felony.

2

*Testimony of S.K.*

{¶ 4} S.K. was 15 at the time of trial and testified to events that allegedly occurred when she was six or seven when she lived with her mother, older half-sister, grandmother, and stepfather Morris. She testified to Morris's card tricks and magic tricks that included asking her to touch his thumb, which was covered by a towel. He would then make his thumb turn to Jell-O and then get hard again. S.K. asserted that Morris's "thumb" was actually his penis. She testified that Morris began lying by her on the couch masturbating, while he rubbed her thigh. When she was in the first grade, Morris began touching her vagina with his hand. S.K. testified that Morris sexually molested her as many as 30 times and that every time, he ejaculated into a towel. Morris told her not to tell anyone what he was doing.

{¶ 5} S.K. testified that she could not recall all the dates, but recalled two specific times that Morris raped her. The first occurred on April 22, 2003, on the day that her mother went to the hospital. She was then nine. A second rape occurred late in October 2005, which she recalled because she was watching a Halloween television show. As she grew older, she began to realize that Morris's conduct was improper.

{¶ 6} When asked if Morris's actions were ever interrupted, S.K. testified that one time, her sister came "hurtling down the stairs," causing Morris to jump and cover himself. S.K. remembered another incident when she and Morris were on the couch and he had a hand down his pants and the other on her thigh, and her mother came down the stairs silently and called out Morris's name, which caused him to jump.

{¶ 7} After her grandmother died in September 2006, S.K. testified, she rebuffed Morris's advances and he eventually stopped. Shortly before Christmas 2007, six months after Morris moved out of the house, S.K. told her parents that Morris had raped her.

*Testimony of S.K.'s Sister*

{¶ 8} S.K.'s sister testified that in 2005 when she was 19, Morris had grabbed her and stated: "You don't know what I would do to you but your mother would get mad." Although she believed that Morris's statement was sexual in nature, she "laughed it off," thinking he was intoxicated.

{¶ 9} At this point, Morris objected to the line of questioning on the grounds that it was prejudicial. The court admitted the testimony under Evid.R. 404(B) to prove "motive, opportunity, intent, preparation, plan, knowledge, or absence" and offered to give a cautionary instruction to the jury prior to the jury's deliberation; the defense accepted that offer. S.K.'s sister then testified that Morris apologized the next day, explaining that he had been drunk. She confirmed that she had seen Morris drinking the night of the incident. She also testified that when she told her mother about the incident, Morris was kicked out of the house for a day. Finally, the sister testified that although Morris and S.K. had been close, seeing them under a blanket together made her feel uncomfortable.

*Testimony of S.K.'s Mother*

{¶ 10} S.K.'s mother confirmed that Morris performed magic tricks for the family. She testified that one night she came downstairs, causing both Morris and S.K. to jump off the sofa "real quick," and that S.K. went to the bathroom. She asked her daughter if everything was ok, and S.K. said yes. The mother testified that she suspected that something was happening between S.K. and Morris but that she believed S.K.'s response.

{¶ 11} S.K.'s mother also testified that if she refused to have sex with Morris, he sometimes kicked the dog. Finally, she testified that Morris ejaculated into a tee shirt or a towel after they had sex. Morris objected. The trial court overruled his objection, but permitted a continuing objection to the line of inquiry

regarding the sexual relationship between Morris and S.K.'s mother. The state argued that because Morris allegedly engaged in this behavior with both S.K. and her mother, it was evidence of his "modus operandi, knowledge, and other acts of evidence." The trial court agreed with the state and admitted this evidence under Evid.R. 404(B).

{¶ 12} In testifying that shortly before Christmas 2007 she and S.K.'s father were told of Morris's sexual molestation of S.K. , S.K.'s mother stated that she "never saw [S.K.] like that. She was so upset. She was red and pulling her head and crying."

*Testimony of Dr. Keck*

{¶ 13} Dr. Gregory Keck, a psychologist, testified that during treatment with him S.K. stated that she had been sexually abused by Morris. She also told Dr. Keck about Morris's magic trick in which he used a towel to cover his "thumb." Dr. Keck testified that although he could not be certain whether a patient was telling the truth, he had no reason to disbelieve S.K.'s assertions regarding Morris. Dr. Keck testified that use of magic tricks is a method that pedophiles use to groom their victims for sexual activity.

*Prosecutor's statements*

{¶ 14} During closing argument, the prosecutor discussed Morris's propositioning of S.K.'s sister, stating that she was

> [t]oo smart for [Morris], maybe too old too, I don't know. You
> see, she looked pretty young. * * * She would know what's
> wrong but you see even when his inhibitions were down when
> he would be drunk, if you want to know a little bit about, and
> there will be an instruction on this, if you want to know a little
> bit about his motives and his intent and his intent for this
> victim, *just look at how he treated his other stepdaughter * * *.*

(Emphasis added.)

**{¶ 15}** In his closing, defense counsel addressed Morris's propositioning of S.K.'s sister by saying, "Did you hear anything about [Morris] ever sexually coming on to her over the course of many years? Absolutely not." Later, he stated: "It's easy to isolate a particular theme within a particular context and say that this is further evidence of somebody who would engage in sexual molestation."

**{¶ 16}** In his rebuttal, the prosecutor referred to the sister as being the victim of a "sexual come-on" by Morris.

*Jury Instruction*

**{¶ 17}** After the closing arguments concluded, the trial judge gave the jury the following instruction:

> Evidence received about the commission of acts other than the offense with which the Defendant is charged in this trial. The evidence was received only for a limited purpose. It was not received, and you may not consider it, to prove the character of the Defendant in order to show that he acted in conformity or in accordance with that character. If you find that the evidence of other crimes or acts is true and that the Defendant committed it, you may consider that evidence only for the purpose of deciding whether it proves the absence of mistake or accident, or the Defendant's motive, opportunity, intent or purpose, preparation or plan to commit the offense charged in this trial or knowledge or circumstances surrounding the offense charged in this trial or

6

the identity of the person who committed the offense in this trial.

That evidence cannot be considered for any other purpose.

The jury convicted Morris of both counts of rape.

**Procedure on Appeal**

*First Appellate Review*

{¶ 18} On appeal, Morris argued that the proposition evidence and the evidence that he kicked the dog were admitted in contravention of Evid.R. 404(B). The court of appeals in a two-to-one decision held that the evidence was not admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident and that the trial court erred in admitting this evidence. 2010-Ohio-4282 at ¶ 25, 32. The court of appeals said that S.K.'s mother's testimony that Morris would kick the dog out of sexual frustration should have been excluded because it had no relevance to any fact at issue in the case and was intended only to show defendant's character as mean and aggressive. The court also said that the sexual-proposition testimony from S.K.'s sister should have been excluded because the challenged testimony did not describe how the other act was a part of a single criminal transaction involving the criminal charges but instead described a wholly unrelated incident. It therefore reversed Morris's convictions, remanding the case for a new trial. *Id.* at ¶ 44.

{¶ 19} We accepted the state's appeal, in which the state asserted that "the court of appeals erred in applying a de novo standard of review to the admissibility of 'other acts' evidence and substituted its own judgment for that of the trial court." 128 Ohio St.3d 1448, 2011-Ohio-1618, 944 N.E.2d 697. We held, "Trial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound

discretion of the trial court. Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review." 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus. Accordingly, we reversed the judgment of the court of appeals and remanded the matter to the court of appeals "to apply an abuse-of-discretion standard." Id. at ¶ 23.

*Second Appellate Review*

{¶ 20} On remand, the court of appeals again reversed the conviction. An opinion by Judge Dickinson stated that the trial court had abused its discretion in admitting the proposition evidence and the kick-the-dog evidence. 2012-Ohio-6151, 985 N.E.2d 274, ¶ 40, 44. Quoting this court's decision in *State v. Bayless*, 48 Ohio St.2d 73, 106, 357 N.E.2d 1035 (1976), *vacated on other grounds*, 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155, the opinion stated that the court could hold that the erroneously admitted other-acts evidence was harmless only if it could " 'declare a belief that the error was harmless beyond a reasonable doubt.' " *Id.* at ¶ 50. Judge Dickinson concluded, "The State's repeated references to improper character evidence violated Mr. Morris's right to a fair trial." *Id.* at ¶ 60.

{¶ 21} We accepted the state's appeal. The state's proposition of law is "When reviewing allegedly erroneous admission of evidence, an appellate court should analyze whether substantial other evidence supports the verdict." 136 Ohio St.3d 1406, 2013-Ohio-2645, 989 N.E.2d 1021.

**Legal Analysis**

*Harmless Error*

{¶ 22} The parties distinguish the standard of review of harmless error based on whether the rights affected by the error are constitutional or nonconstitutional rights. The state argues that improper admission of Evid.R. 404(B) evidence does not involve the violation of a constitutional right and

therefore that the nonconstitutional harmless-error standard of review set out in *State v. Webb*, 70 Ohio St.3d 325, 335, 638 N.E.2d 1023 (1994), applies. *Webb* held that nonconstitutional error is harmless if there is substantial other evidence to support the guilty verdict. On the other hand, Morris argues that the erroneously admitted Evid.R. 404(B) evidence prejudicially violated his right to a fair trial, requiring application of the constitutional harmless-error standard of review set out in *State v. Crawford,* 32 Ohio St.2d 254, 255, 291 N.E.2d 450 (1972), which held that constitutional error is harmless if it is harmless beyond a reasonable doubt.

**{¶ 23}** But in actuality, the Ohio Rules of Criminal Procedure do not specifically use the words "constitutional" or "nonconstitutional" to divide the standard of review in this way. Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." During a harmless-error inquiry, the state has the burden of proving that the error did not affect the substantial rights of the defendant. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15. Furthermore, if there is "a '[d]eviation from a legal rule,' " courts undertake a " 'harmless error' inquiry—to determine whether the error 'affect[ed] substantial rights' of the criminal defendant." *State v. Fischer*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7, quoting *United States v. Olano*, 507 U.S. 725, 732-733, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The term "substantial rights" has been interpreted to require that " 'the error must have been *prejudicial*.' (Emphasis added.)" *Id.*, quoting *Olano* at 734. If a court determines that the error did not affect the defendant's substantial rights, then the error is harmless and " 'shall be discarded.' " *Id.*, quoting Crim.R. 52(A).

**{¶ 24}** Thus Crim.R. 52(A), the harmless-error rule, was created in essence to forgive technical mistakes. But rather than distinguish between

constitutional and nonconstitutional rights, the rule asks whether the rights affected are "substantial." And the second important question is what happens if substantial rights *are* affected. Not every error requires that a conviction be vacated or a new trial granted. R.C. 2945.83 states:

> No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of:
>
> * * *
>
> (C) The admission or rejection of any evidence offered against or for the accused *unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby*.

(Emphasis added.)

{¶ 25} And so the real issue when Evid.R. 404(B) evidence is improperly admitted at trial is whether a defendant has suffered any prejudice as a result. If not, the error may be disregarded as harmless error. And while courts may determine prejudice in a number of ways and use language that may differ, they focus on both the impact that the offending evidence had on the verdict and the strength of the remaining evidence. Both the error's impact on the verdict and the weight of the remaining evidence must be considered on appellate review.

*Ohio Case Law*

{¶ 26} We disagree with the state's position that Ohio law is inconsistent on harmless error. Erroneous admission of Evid.R. 404(B) evidence is a singular problem. "Prosecution evidence that a defendant has committed other crimes, wrongs or acts independent of the offense for which he is on trial is not generally admissible to demonstrate that the defendant has a propensity for crime or that his character is in conformity with the other acts." *State v. Mann*, 19 Ohio St.3d 34,

10

482 N.E.2d 592 (1985), paragraph one of the syllabus. The question is when an improper admission affects the defendant's "substantial rights" so that a new trial is required as a remedy. Several principles emerge from our cases.

{¶ 27} First, there must be prejudice to the defendant as a result of the admission of the improper evidence at trial. "[A] judgment of conviction should not be reversed because of 'the admission * * * of any evidence offered against * * * the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby.' " *State v. Crawford*, 32 Ohio St.2d 254, 255, 291 N.E.2d 450 (1972), quoting R.C. 2945.83(C). *See, e.g., State v. Abrams*, 39 Ohio St.2d 53, 56, 313 N.E.2d 823 (1974) (same requirement in considering improper judge-jury communications).

{¶ 28} Second, an appellate court must declare a belief that the error was not harmless beyond a reasonable doubt. *Id.; Crawford*; *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *State v. Bayless*, 48 Ohio St.2d 73, 106, 357 N.E.2d 1035 (1976), *vacated in part on other grounds*, 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155 (1978); *accord State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus ("Error in the admission of other act testimony is harmless when there is no reasonable possibility that the testimony contributed to the accused's conviction"), *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978).

{¶ 29} Third, in determining whether a new trial is required or the error is harmless beyond a reasonable doubt, the court must excise the improper evidence from the record and then look to the remaining evidence. In a case dealing with the improper admission of privileged spousal testimony, we stated that " 'the cases where imposition of harmless error is appropriate must involve either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction.' " *State v. Rahman*, 23 Ohio St.3d 146, 151, 492

N.E.2d 401 (1986), quoting *State v. Ferguson*, 5 Ohio St.3d 160, 166, 450 N.E.2d 265 (1983), fn. 5.  But in reviewing the remaining evidence, we cautioned, "We are also mindful that our role upon review of this case is not to sit as the supreme trier of fact, but rather to assess the impact of this erroneously admitted testimony on the jury." *Id*. at fn. 4.

{¶ 30} Here, the lead opinion of the Ninth District Court of Appeals considered both the prejudice to Morris and the remaining evidence.  It determined that the trial court had erroneously admitted inflammatory Evid.R. 404(B) evidence in a case that was not strong. There was no physical evidence, and there were questions regarding the credibility of Morris's stepdaughter S.K., the main witness.  Furthermore, the opinion emphasized that the state had repeatedly referred to the evidence in its closing argument.  These improper statements were thus highlighted for the jury.  Given the weakness of the evidence that remained, the opinion deemed that a new trial was necessary because the court could not find beyond a reasonable doubt that the improper evidence had no effect. The only remedy for the prejudice was a new trial.

{¶ 31} We ourselves have considered that the actions of a prosecutor may combine with an evidentiary error to cause greater impact.  In a capital case in which we vacated a death sentence and remanded the case for resentencing pursuant to R.C. 2929.06, the trial court had allowed gruesome slides to be admitted into evidence during the guilt phase.  *State v. Thompson,* 33 Ohio St.3d 1, 15, 514 N.E.2d 407 (1987).  Although the conviction was unaffected, in considering the penalty phase  when the prosecutor emphasized this evidence, we stated:

> The prosecutor's subsequent reference to those same slides at the penalty phase was impermissible. * * * [H]is entreaty that the jury should remember the slides could have had no other effect than to

> cause the jurors to re-experience the horror and outrage they must
> have felt upon viewing the slides earlier in the trial. This later use
> of the slides to appeal to the jurors' emotions and to prejudice them
> against the appellant is grounds for reversal.

*Id.*

{¶ 32} In other words, blatant prejudice may override even a strong case and require a new trial. As noted, however, an improper evidentiary admission under Evid.R. 404(B) may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence is overwhelming. *State v. Williams,* 6 Ohio St.3d 281, 290, 452 N.E.2d 1323 (1983), quoting *Harrington v. California,* 395 U.S. at 254, 89 S.Ct. 1726, 23 L.Ed.2d 284.

*The* Webb *Case*

{¶ 33} The state relies upon the statement that "[n]onconstitutional error is harmless if there is substantial other evidence to support the guilty verdict." *State v. Webb*, 70 Ohio St.3d at 335, 638 N.E.2d 1023. As indicated earlier, both the nature of the error and the prejudice to defendant (the measure of how the error affected the verdict) are important. Appellate judges upon review determine these issues and decide which trial errors are harmless and which instead necessitate the remedy of reversal and new trial. Although the language used by the courts may vary, the principles themselves are clear: That is, technical error will be ignored under Crim.R. 52(A); structural error will result in automatic reversal, *State v. Fischer*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222; and evidence errors that are prejudicial because they improperly affect the verdict will be excised from the record with the remaining evidence weighed to see if there is evidence beyond a reasonable doubt of the appellant's guilt, *State v. Rahman*, 23 Ohio St.3d at 150, 492 N.E.2d 401. Therefore, we hold that in determining whether to grant a new trial as a result of the erroneous admission of evidence under Evid.R. 404(B), an appellate court must consider both the impact of the

offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record.

## Conclusion

{¶ 34} The Ninth District has twice reviewed the record and held that this evidence was improperly admitted. We affirm the judgment of the court of appeals vacating the conviction and granting a new trial.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, and O'NEILL, JJ., concur.

KENNEDY, and FRENCH, JJ., dissent.

O'DONNELL, J., dissents.

_____

**KENNEDY, J., dissenting.**

{¶ 35} Respectfully, I dissent.

*Introduction*

{¶ 36} I agree with the state insofar as I categorically reject the majority's position that Ohio law is consistent in the test that is applied to determine whether improperly admitted other-acts evidence is harmless error. I further reject the majority's attempt to disavow our precedent that distinguishes between constitutional and nonconstitutional harmless error while in effect adopting the constitutional, "beyond a reasonable doubt" harmless-error test as the second prong of its test for erroneously admitted other-act evidence. In my view, this wrongly elevates the improper admission of other-acts evidence to the level of an error of constitutional import. I would hold that the improper admission of other-acts evidence involves a nonconstitutional error, and in order to settle Ohio law, I would adopt the federal circuit courts' nonconstitutional harmless-error test originally set forth in *United States v. Kotteakos*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed.2d 1557 (1946), which provides that "without stripping the erroneous action

from the whole," an error is harmless if the outcome was "not substantially swayed by the error." *Id.* at 765. I would further hold that making this determination requires a case-by-case inquiry of the centrality of the evidence, limiting instructions, and other relevant factors set forth below.

*Ohio Law Is Inconsistent*

**{¶ 37}** The majority finds no inconsistency in Ohio law regarding the harmless-error analysis of improperly admitted other-acts evidence. I disagree.

**{¶ 38}** This court has applied the constitutional harmless-error standard of review in some cases. E.g., *State v. Lytle*, 48 Ohio St.2d 391, 404, 358 N.E.2d 623 (1976) (the court held that there was "no reasonable possibility that the improperly-admitted 'other act' testimony contributed to the appellant's conviction, and * * * that the error committed was harmless beyond a reasonable doubt"), vacated in part on other grounds, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978); *State v. Gumm*, 73 Ohio St.3d 413, 425-426, 653 N.E.2d 253 (1995) (the court was convinced beyond a reasonable doubt that the defendant would have been convicted even without the improperly admitted evidence).

**{¶ 39}** But in other cases, this court has applied the nonconstitutional "substantial other evidence" harmless-error standard of review as set out in *State v. Webb*, 70 Ohio St.3d 325, 638 N.E.2d 1023 (1994). E.g., *State v. Getsy*, 84 Ohio St.3d 180, 192-193, 702 N.E.2d 866 (1998) (other-acts evidence was improperly admitted, but the error was harmless because the "evidence against Getsy was substantial"); and *State v. Brown*, 100 Ohio St.3d 51, 56-57, 796 N.E.2d 506 (testimony that Brown was in a gang was improperly admitted, but the error was harmless "given the substantial evidence of [Brown's] guilt").

**{¶ 40}** Many Ohio appellate districts apply a constitutional harmless-error standard of review in determining whether improperly admitted other-acts evidence is harmless. E.g., *State v. Williams*, 1st Dist. Hamilton Nos. C-060631

and C-060668, 2007-Ohio-5577, ¶ 38, 39; *State v. Dotson*, 2d Dist. Clark No. Civ.A.2003 CA 34, 2004-Ohio-6875, ¶ 17; *State v. Elliot*, 91 Ohio App.3d 763, 771, 633 N.E.2d 1144 (3d Dist.1993); *State v. Davis*, 7th Dist. Mahoning No. 08 MA 236, 2011-Ohio-292, ¶ 67; *State v. Watson*, 9th Dist. Summit No. 25915, 2012-Ohio-1624, ¶ 22; *State v. Jackson*, 10th Dist. Franklin No. 02AP-867, 2003-Ohio-6183, ¶ 32; *State v. Foster*, 11th Dist. Portage No. 2004-P-0104, 2005-Ohio-5281, ¶ 59; *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557, ¶ 11. However, at least two districts currently apply the nonconstitutional substantial-other-evidence harmless-error standard of review set out in *Webb*. *State v. Murphy*, 4th Dist. Scioto No. 09CA3311, 2010-Ohio-5031, ¶ 80; and *State v. Ceron*, 8th Dist. Cuyahoga No. 99388, 2013-Ohio-5241, ¶ 97.

{¶ 41} Therefore, contrary to the majority opinion, I agree with the state and believe that Ohio law is inconsistent in its harmless-error review of improperly admitted other-acts evidence and that this inconsistency must be rectified.

*The Law Recognizes a Distinction Between Constitutional and Nonconstitutional Harmless Error*

{¶ 42} In reaching its determination, the majority ignores the distinction between constitutional and nonconstitutional harmless error on the basis that the language in Crim.R. 52 fails to expressly recognize the distinction. Crim.R. 52(A) does state that "[a]ny error * * * which does not affect substantial rights shall be disregarded." However, well-settled case law recognizes a distinction between constitutional and nonconstitutional errors when employing the harmless-error analysis. The distinction is important because it imposes different standards of review depending upon the nature of the error involved.

> A constitutional error is harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute

16

> to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). By contrast, the standard for nonconstitutional error, as set forth in *Kotteakos v. United States*, provides that such an error is harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed.2d 1557 (1946).

(Emphasis added; citations omitted.) *United States v. Powell*, 334 F.3d 42, 45 (D.C.Cir.2003).

{¶ 43} This court has also recognized the distinction between constitutional and nonconstitutional harmless errors in Ohio. *See State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 63, 64. Accordingly, the majority improperly disregards this well-settled distinction in its analysis.

{¶ 44} Moreover, the determination of the majority that Crim.R. 52 fails to expressly distinguish constitutional and nonconstitutional harmless error raises the question of whether the majority is disavowing this distinction in all harmless-error cases, only in harmless-error cases involving other-act evidence, or in just this case.

*The Majority Adopts the Constitutional Harmless-Error Analysis*

{¶ 45} In determining whether improperly admitted other-acts evidence is harmless, the majority holds that "an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record." (Emphasis added.) Majority opinion at syllabus. According to the majority, courts must first ask: Is the evidence prejudicial? If it is, then the reviewing court must determine, improperly admitted other-acts evidence aside, whether it is convinced beyond a reasonable doubt that there is overwhelming evidence against the defendant.

Despite purportedly rejecting the constitutional/nonconstitutional distinction, the majority has nevertheless apparently adopted the constitutional harmless-error standard of review. *See United States v. Estrella*, 518 Fed.Appx. 822, 825, 2013 WL 1943433, *2 (11th Cir.2013) ("Moreover, even if Estrella could establish a constitutional violation, any error in admitting his comments concerning the robbery of Detective Lebid would have been harmless beyond a reasonable doubt in light of the overwhelming evidence of Estrella's guilt").

*Improperly Admitted Other-Acts Evidence Is Nonconstitutional Error*

{¶ 46} I believe that the majority's holding has erroneously elevated the improper admission of other-acts evidence to the status of constitutional error for purposes of harmless-error determination. Although courts recognize that improper admission of other-acts evidence may result in a violation of the defendant's constitutional right to a fair trial, the error in the admission of the evidence originates from a violation of Evid.R. 404(B). *See* generally *State v. Wegmann*, 3d Dist. Allen No. 1-06-98, 2008-Ohio-622, ¶ 42. Therefore, the violation of a rule, including Evid.R. 404, implicates a nonconstitutional harmless-error analysis. *See Murphy v. Dewine*, 6th Cir. No. 1:1-cv-581, 2012 WL 2357391 (June 19, 2012); *United States v. Moncayo*, 440 Fed.Appx. 647, 656 (10th Cir.2011); and *United States v. Boateng*, 81 F.3d 170, unpublished opinion; text at 1996 WL 155154, *1 (9th Cir.1996). Because the error herein originates from a violation of Evid.R. 404(B), I agree with the state's proposition of law that the nonconstitutional harmless-error standard of review applies, contrary to the majority's holding.

{¶ 47} However, I believe that the nonconstitutional harmless-error test set out in Webb is inadequate to address whether improperly admitted other-acts evidence is harmless. Under Webb, an error is harmless if there is substantial other evidence to support the verdict. Therefore, under *Webb*, a court would not inquire as to whether improperly admitted other-acts evidence affected the

18

outcome of the case, and yet precluding a jury from considering whether a defendant acted in conformity with a prior bad act is precisely the purpose of excluding evidence under Evid.R. 404(B). *State v. Nichols*, 10th Dist. Franklin No. 97APA09-1162, 1998 WL 226430, * 3 (May 5, 1998) (the risk of other-acts evidence is that the jury will use it to "infer character and conformity therewith"). Therefore, instead of relying on *Webb*, I would look to the federal nonconstitutional harmless-error standard of review as set out in *Kotteakos*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed.2d 1557. *See United States v. Lane*, 474 U.S. 438, 446, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986), fn. 9 (recognizing that *Kotteakos* sets out the harmless-error "standard for nonconstitutional errors").

{¶ 48} In *Kotteakos*, the issue was "whether [defendants] * * * suffered substantial prejudice from being convicted of a single general conspiracy by evidence which * * * proved not one conspiracy but some eight or more different ones of the same sort executed through a common key figure." *Kotteakos,* 328 U.S. at 752. In determining whether the error was harmless, the court in *Kotteakos* stated that "[t]he crucial thing is the impact of the thing done wrong on the minds of [the jury] * * * in the total setting." *Id*. at 764. The court elaborated:

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Id*. at 765.

{¶ 49} Unlike *Webb*, which holds that an error is harmless if there is substantial other evidence to support the verdict, *Kotteakos* requires courts to consider the effect of the error on the outcome of the trial within the context of the entire record.

{¶ 50} The First, Fourth, Sixth, Seventh, and Tenth Federal Circuit Courts of Appeals, as well as the Court of Appeals for the District of Columbia, have adopted the *Kotteakos* nonconstitutional harmless-error standard of review for the purpose of determining whether improperly admitted other-acts evidence is harmless. *United States v. Garcia-Rosa*, 876 F.2d 209, 222 (1st Cir.1989), vacated on other grounds sub nom. *Rivera-Feliciano v. United States*, 498 U.S. 954, 111 S.Ct. 377, 112 L.Ed.2d 391 (1990); *United States v. Byers*, 649 F.3d 197, 211 (4th Cir.2011); *United States v. Corsmeier*, 617 F.3d 417, 422 (6th Cir.2010), fn. 3; *United States v. Hill*, 898 F.2d 72, 75-76 (7th Cir.1990); *United States v. Starr*, 276 Fed.Appx. 761, 765 (10th Cir.2008); and *United States v. Linares*, 367 F.3d 941, 952 (D.C.Cir.2004).

{¶ 51} Consistent with these federal circuits, I would adopt the nonconstitutional harmless-error standard of review set forth in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed.2d 1557, for the purpose of determining whether improperly admitted other-acts evidence is harmless error under Crim.R. 52(A).

{¶ 52} While *Kotteakos* supplies the proper harmless-error standard of review, it does not instruct courts on what to consider in determining whether an error is harmless or not, but some federal circuits have weighed in on that question. In *United States v. Sepulveda*, 15 F.3d 1161, 1182 (1st Cir.1993), the court stated:

There is no bright-line rule for divining when particular errors that result in a jury's exposure to improper evidence are (or are not) harmless. Rather, a harmlessness determination demands a panoramic, case-specific inquiry considering, among other things, the centrality of the tainted material, its uniqueness, its prejudicial impact, the uses to which it was put during the trial, the relative strengths of the parties' cases, and any telltales that furnish clues to the likelihood that the error affected the factfinder's resolution of a material issue.

{¶ 53} And in *United States v. Regan*, the Fifth Circuit Court of Appeals stated that a court's "issuance of a limiting instruction 'greatly minimize[s]' the risk of undue prejudice posed by an erroneous admission under Rule 404(b)." 725 F.3d 471, 490 (5th Cir.2013), quoting *United States v. Crawley*, 533 F.3d 349, 355 (5th Cir.2008).

{¶ 54} Therefore, I would hold that improper admission of other-acts evidence is harmless error under Crim.R. 52(A) if a "court can say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *United States v. Kotteakos*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed.2d 1557. And I would hold that applying this test "demands a panoramic, case-specific inquiry considering, among other things, the centrality of the tainted material, its uniqueness, its prejudicial impact, the uses to which it was put during the trial, the relative strengths of the parties' cases, * * * any telltales that furnish clues to the likelihood that the error affected the factfinder's resolution of a material issue," and any limiting instructions pertaining to other-acts evidence. *United States v. Sepulveda*, 15 F.3d 1161, 1182.

{¶ 55} I would remand this case to the court of appeals to apply this test to the evidence in this case.

{¶ 56} Therefore, I respectfully dissent.

FRENCH, J., concur.

_____

**O'DONNELL, J., dissenting.**

{¶ 57} Respectfully, I dissent.

{¶ 58} The parties here seek a determination of whether the admission of other acts evidence in this case is a constitutional or nonconstitutional error and clarification as to the appropriate standard of appellate review. The majority, in my view, conflates the principles that control this case with standards that apply when the state fails to accord an accused a federally guaranteed constitutional right, and it second-guesses the credibility determinations made by jurors in this case.

{¶ 59} Other acts evidence may be admitted to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but cannot be offered to prove the character of an accused in order to show that the accused acted in conformity therewith. *See* Evid.R. 404(B) and R.C. 2945.59.

{¶ 60} Crim.R. 52(A) provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Similarly, Evid.R. 103(A) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected" and the party timely objected or made an offer of proof.

*The Ohio Rule on Harmless-Error*

{¶ 61} Chief Justice Moyer explained the rule for appellate review of harmless-error this way in *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643:

> [I]f the defendant has objected to an error in the trial court, an appellate court reviews the error under the "harmless error" standard in Crim.R. 52(A)—"a standard significantly more favorable to the defendant." *United States v. Curbelo* (C.A.4, 2003), 343 F.3d 273, 286. Under that rule, the *government* bears the burden of demonstrating that the error did not affect the substantial rights of the defendant. [*United States v.*] *Olano,* 507 U.S. [725] 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 [1993]; *State v. Gross,* 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 136 ("Once [the defendant] objected [to the error], the burden shifted to the state to demonstrate an absence of prejudice"). * * * An appellate court must reverse a conviction if the government does not satisfy this burden; unlike Crim.R. 52(B), Crim.R. 52(A) is mandatory, not permissive, and thus affords the appellate court no discretion to disregard the error. Id. at 735–736, 113 S.Ct. 1770, 123 L.Ed.2d 508.

(Emphasis sic.) *Id.* at ¶ 15.

{¶ 62} This court has earlier specified that to affect the substantial rights of an accused, " 'the error must have been *prejudicial:* It must have affected the outcome of the [trial] court proceedings.' (Emphasis added.)" *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7, quoting *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). *See also United States v. Dominguez Benitez*, 542 U.S. 74, 81, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004) ("the standard phrased as 'error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding").

**{¶ 63}** And although we have not quantified the degree of proof needed to establish harmless error, other jurisdictions with rules analogous to Ohio Crim.R. 52(A) require the prosecution to demonstrate that more likely than not the error is harmless. *See, e.g.*, *State v. Herbel*, 296 Kan. 1101, 1110, 299 P.3d 292 (2013); *United States v. Keck*, 643 F.3d 789, 798 (10th Cir.2011); *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1099 (9th Cir.2005); *see also O'Neal v. McAninch*, 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (explaining that in a federal habeas action, error is not harmless when "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error"); *Dominguez Benitez*, 542 U.S. at 83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (requiring an accused asserting plain error to show "a reasonable probability" that but for the error the outcome would have been otherwise).

*Harmless Error Implicating a Constitutional Right*

**{¶ 64}** However, in *Chapman v. California*, 386 U.S. 18, 21, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the court clarified that a state harmless error rule is limited and does not control when the error violates the federal constitutional rights of an accused:

> The application of a state harmless-error rule is, of course, a state question where it involves only errors of state procedure or state law. * * * Whether a conviction for crime should stand when a State has failed to accord federal constitutionally guaranteed rights is every bit as much of a federal question as what particular federal constitutional provisions themselves mean, what they guarantee, and whether they have been denied.

In its ruling, the court "requir[ed] the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the

verdict obtained," and it held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24. And as the Eighth Circuit Court of Appeals has noted, the reasonable-doubt standard imposes a stricter test than that applied to evidentiary errors that do not affect constitutional rights. *United States v. DeAngelo*, 13 F.3d 1228, 1233 (8th Cir.1994).

{¶ 65} Thus, in my view, the law at issue here is well-defined. When preserved error arises from a question of state procedure or state law and does not affect a federally guaranteed constitutional right, Crim.R. 52(A) applies, and the error is harmless if the state can demonstrate that it is more likely than not that the error did not affect the outcome of the trial. But when a preserved error arises from the state's failure to accord a federally guaranteed constitutional right, *Chapman* controls, and the state must prove beyond a reasonable doubt that the error did not contribute to the guilty verdict.

{¶ 66} Rather than admit that this court has, on occasion, misapplied these rules and relied on the *Chapman* standard to review nonconstitutional error, the majority purports to reconcile our case precedent. First, it seems to require the accused to show that prejudice "affirmatively appears" on the record, majority opinion, ¶ 27, the standard for reviewing plain error; a claim of harmless error, however, requires the state to show that prejudice does *not* affirmatively appear on the record. *See Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 15; *State v. Quarterman,* Slip Opinion No. 2014-Ohio-4034, ¶ 16. The majority then merges the Crim.R. 52(A) inquiry with the *Chapman* standard and now requires the state to prove beyond a reasonable doubt that *any preserved error* did not *contribute* to the conviction—presumably even if the error would not have affected the outcome of the trial. This, in my view, mischaracterizes the law with respect to nonconstitutional harmless error and further confuses this field of law.

**{¶ 67}** Notably, the parties recognize this confusion and agree that separate standards of review apply in deciding whether constitutional or nonconstitutional errors are harmless. They maintain that we need only determine whether the erroneous admission of other acts evidence is a constitutional or a nonconstitutional error and then apply the corresponding standard.

*Review of Other Acts Evidence*

**{¶ 68}** In *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), a masked man entered a home in Frederiksted, St. Croix, Virgin Islands, and robbed the occupant at gunpoint. During a struggle, the victim, Vena Henry, unmasked the intruder and later identified him as Rueben Dowling. However, a jury acquitted Dowling of burglary, attempted robbery, assault, and weapons offenses. The federal government then prosecuted him for a bank robbery perpetrated by a man wearing a similar mask, and the district court permitted Henry to testify regarding the robbery at her home in order to identify Dowling as the bank robber. The Third Circuit Court of Appeals determined that the trial court had erred in permitting this other acts evidence, and in reviewing for harmless error, it "explicitly declined to apply the more stringent standard, see *Chapman v. California,* 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705] (1967), applicable to constitutional errors because, according to the court, the District Court's mistake was merely evidentiary and not of constitutional dimension." *Dowling*, 493 U.S. at 346-347.

**{¶ 69}** On appeal to the Supreme Court, Dowling argued that "the Third Circuit was wrong when it found that the admission of Henry's testimony did not offend the Constitution and therefore declined to apply the *Chapman v. California, supra,* harmless-error standard." *Id*. at 347.

**{¶ 70}** The Supreme Court did not accept that argument and affirmed the conviction, concluding that "the admission of Ms. Henry's testimony was constitutional and the Court of Appeals therefore applied the correct harmless-

error standard." *Dowling*, 493 U.S. at 354. The court first rejected the argument that the Double Jeopardy Clause precluded the government from eliciting the other acts evidence. *Id.* at 348. It then considered whether "the introduction of this evidence was unconstitutional because it failed the due process test of 'fundamental fairness.' " *Dowling*, 493 U.S. at 352. The court recognized that

> the introduction of evidence in circumstances like those involved here has the potential to prejudice the jury or unfairly force the defendant to spend time and money relitigating matters considered at the first trial. The question, however, is whether it is acceptable to deal with the potential for abuse through nonconstitutional sources like the Federal Rules of Evidence, or whether the introduction of this type of evidence is so extremely unfair that its admission violates "fundamental conceptions of justice." *United States v. Lovasco,* 431 U.S. 783, 790 [97 S.Ct. 2044, 2048, 52 L.Ed.2d 752] (1977).

(Footnote omitted.) *Dowling*, 493 U.S. at 352. The Supreme Court determined that Henry's testimony did not violate principles of fundamental fairness, explaining that the district court's authority to exclude potentially prejudicial evidence adequately addressed the risk that a jury will convict the accused on the basis of inferences drawn from other acts evidence and therefore permitted Dowling to receive a fair trial.

{¶ 71} As *Dowling* demonstrates, the accused may not bootstrap any trial error in the admission of evidence to the right to a fair trial in order to obtain the heightened scrutiny that *Chapman* requires for constitutional errors. Thus, federal circuit courts treat the admission of other acts evidence as a nonconstitutional error and do not apply *Chapman* in these circumstances. *See, e.g., United States*

*v. Hicks*, 575 F.3d 130, 143 (1st Cir.2009); *United States v. Corey*, 566 F.2d 429, 432 (2d Cir.1977); *United States v. McBride*, 676 F.3d 385, 400 (4th Cir.2012); *United States v. Corsmeier*, 617 F.3d 417, 422 (6th Cir.2010), fn. 3; *United States v. Miller*, 673 F.3d 688, 700 (7th Cir.2012); *United States v. King*, 36 F.3d 728, 733 (8th Cir.1994), fn. 5; *United States v. Bailey,* 696 F.3d 794, 803 (9th Cir.2012); *United States v. Starr*, 276 Fed.Appx. 761, 765 (10th Cir.2008); *United States v. Johnson*, 519 F.3d 478, 483 (D.C.Cir.2008).

**{¶ 72}** Therefore, because the erroneous admission of other acts evidence in violation of Evid.R. 404(B) does not violate the United States Constitution, our review of the record for harmless error requires application of Crim.R. 52(A) and Evid.R. 103(A) to determine whether the state has demonstrated that the other acts evidence more likely than not had no effect on the outcome of the trial. *See State v. Lundgren*, 73 Ohio St.3d 474, 486, 653 N.E.2d 304 (1995) ("even where a court abuses its discretion in the admission of evidence, we must review whether the evidentiary ruling affected a substantial right of the defendant. Evid.R. 103 and Crim.R. 52(A)").

**{¶ 73}** The other acts evidence elicited here—that Morris occasionally kicked the dog after his wife refused him sex and that he once propositioned his adult stepdaughter—did not affect the outcome of this trial. First, the trial court instructed the jury that it could not consider this evidence to prove that Morris acted in conformity with bad character, and we presume that a jury follows limiting instructions on the use of other acts evidence. *See State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 23.

**{¶ 74}** Second, this other acts evidence is insignificant when compared to the compelling evidence that he groomed a six-year-old child for molestation— using a "magic trick" to make his "thumb" turn to Jell-O and then become hard again—and then sexually abused and raped her over an extended period of time. In my view, it is not likely that, but for the admission of evidence that Morris

kicked the dog when his wife refused to have sex with him and propositioned his adult stepdaughter, the jury would not have found him to be guilty of rape of a child under 13. Nor am I persuaded by the majority's vague, conclusory statement that "there were questions regarding the credibility" of the victim. Majority opinion, ¶ 30. Credibility of witnesses is a determination made by jurors, and that is their province. Contrary to the majority, I would respect the jury's credibility determination in this case and its finding that the victim's testimony proved beyond a reasonable doubt that Morris had raped her. The verdict is based on that testimony, not evidence about kicking a dog.

{¶ 75} Accordingly, the admission of other acts evidence in this case is harmless error, and I would reverse the judgment of the court of appeals and reinstate Morris's convictions for the two separate counts of rape.

_____

Dean Holman, Medina County Prosecuting Attorney, and Matthew A. Kern, Assistant Prosecuting Attorney, for appellant.

David C. Sheldon, for appellee.

Timothy McGinty, Cuyahoga County Prosecuting Attorney, and Daniel Van, Assistant Prosecuting Attorney, urging reversal for amicus curiae the Cuyahoga County Prosecuting Attorney's Office.

John Murphy, Joseph T. Deters, Hamilton County Prosecuting Attorney, and Rachel Lipman Curran, Assistant Prosecuting Attorney, urging reversal for amicus curiae the Ohio Prosecuting Attorney Association.

_____